# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| BRUCE CARNEIL WEBSTER, | ) | |
| | ) | Criminal Case No. |
| Movant, | ) | 4:94-CR-121-Y |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **THIS IS A CAPITAL CASE** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## SUCCESSIVE MOTION FOR COLLATERAL RELIEF AND TO VACATE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND IN LIGHT OF *UNITED STATES V. DAVIS*, 139 S. CT. 2319 (2019)

Movant Bruce Carneil Webster, through undersigned counsel,

respectfully requests, pursuant to 28 U.S.C. § 2255 and in light of

*United States v. Davis*, 139 S. Ct. 2319 (2019), that this Court set aside

the judgment entered against him on Count Six.[1] Mr. Webster states

the following grounds for granting this motion:

---

[1] As explained below, Mr. Webster's death sentence was vacated in 2019 because Mr. Webster is intellectually disabled. The judgment vacating his death sentence is currently on appeal. Though not currently under a valid death sentence, Mr. Webster is incarcerated on federal death row in Terre Haute, Indiana, while that appeal is pending.

## INTRODUCTION

The Supreme Court recently held that the residual clause of 18 U.S.C. § 924(c) is unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Under *Davis*, a predicate offense qualifies as a crime of violence to support a § 924(c) conviction only if it meets the definition of crime of violence in § 924(c)'s elements clause. The predicate "crimes of violence" for Mr. Webster's § 924(c) conviction were kidnapping resulting in death and conspiracy to commit kidnapping. Neither kidnapping resulting in death nor conspiracy to commit kidnapping is a crime of violence under § 924(c)'s elements clause because neither crime requires, as an element, the use, threatened use, or attempted use of force. Consequently, there are no valid predicates for Mr. Webster's Count Six § 924(c) conviction. Therefore, Mr. Webster's § 924(c) conviction must be vacated.

## RELEVANT PROCEDURAL HISTORY

### I. Mr. Webster was tried and sentenced to death, and his conviction and death sentence were upheld on direct appeal.

On November 22, 1994, a superseding indictment charged Mr. Webster, along with co-defendants Orlando Hall, Demetrius Hall, Marvin Holloway, and Steven Beckley, with crimes related to the

kidnapping and murder of Lisa Rene. *See* Doc. 15 (Superseding Indictment).

Specifically, Count One of the superseding indictment charged Mr. Webster with kidnapping in which a death occurred in violation of 18 U.S.C. § 1201(a)(1). Count Two charged Mr. Webster with conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c). Count Six charged Mr. Webster with carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The kidnapping and conspiracy charges in Counts One and Two were alleged as predicates to the § 924(c) charge in Count Six. The other counts against Mr. Webster were ultimately dismissed.

In a trial severed from his co-defendants, Mr. Webster was convicted of Counts One, Two, and Six. He was sentenced to death on Count One (kidnapping), sentenced to life imprisonment on Count Two (conspiracy to commit kidnapping), and sentenced to sixty months on Count Six (the § 924(c) charge for carrying a firearm during and in relation to a crime of violence). On direct appeal, the Fifth Circuit affirmed Mr. Webster's convictions and sentence. *See United States v. Webster*, 162 F.3d 308 (5th Cir. 1998), *cert. denied*, 528 U.S. 829 (1999).

## II. Mr. Webster's first § 2255 motion was denied.

Mr. Webster's initial motion to vacate his conviction and sentence under 28 U.S.C. § 2255 was denied. *See Webster v. United States*, No. 4:00-CV-1646-Y, 2003 WL 23109787 (N.D. Tex. Sept. 30, 2003). The Fifth Circuit affirmed denial of the § 2255 motion. *United States v. Webster*, 421 F.3d 308 (5th Cir. 2005), *cert. denied*, 549 U.S. 828 (2006).

## III. Mr. Webster's death sentence was vacated because he is intellectually disabled.

In 2009, Mr. Webster moved the United States Court of Appeals for the Fifth Circuit for authorization to file a successive § 2255 motion to vacate his death sentence based on newly discovered evidence of intellectual disability. The court denied Mr. Webster's motion. *See In re Webster*, 605 F.3d 256, 257 (5th Cir.), *cert. denied*, 562 U.S. 1091 (2010). Mr. Webster then filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of Indiana seeking to challenge his death sentence based on the same newly discovered evidence of intellectual disability. After initially denying the petition, on remand from the Seventh Circuit, the district court concluded that Mr. Webster established that he is intellectually disabled and vacated his death sentence. *See*

*Webster v. Daniels,* 784 F.3d 1123 (7th Cir. 2015) (*en banc*); S.D. Ind. Case No. 2:12-cv-00086-JPH-MJD, Doc. 198 (06/18/19 Order) at 21. The Government's appeal of that decision is currently pending. *See* 7th Cir. Case No. 19-2683, Doc. 36 (5/21/20 Order setting oral argument).

## ARGUMENT

### I. Impact of *United States v. Davis*

The Supreme Court's recent holding in *United States v. Davis*, 139 S. Ct. 2319 (2019), invalidated a key provision of 18 U.S.C. § 924(c). Section 924(c) makes it a crime for any person to use or carry a firearm during and in relation to a crime of violence.

Prior to *Davis*, § 924(c) defined "crime of violence" in two alternate clauses. The "residual clause" defined a crime of violence as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). The "elements clause" defined a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).

In *Davis*, the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague. 139 S. Ct. at 2336. As a result, a conviction

under § 924(c) can stand only if the charged predicate crime of violence falls under the elements clause—that is, if the predicate crime requires "as an element" the intentional use of physical force or the threat of use of such force. *See United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019) ("Because *Davis* rendered 18 U.S.C. § 924(c)(3)'s residual clause unconstitutional, Reece's three firearms convictions predicated on conspiracy to commit bank robbery can be sustained only if conspiracy to commit bank robbery can be defined as a COV under § 924(c)(3)'s elements clause.").

Further, this determination must be made using the "categorical approach." *United States v. Buck*, 847 F.3d 267, 274 (5th Cir. 2017). In other words, the analysis must focus solely on the language of the statute defining the elements of the charged predicate crime to determine whether any element requires the use, attempted use, or threatened use of violence. *Reece*, 938 F.3d at 635. The determination is not based on the defendant's actual conduct. *Id.*

## II. Mr. Webster is entitled to relief under § 2255.

### A.    Mr. Webster's claims are cognizable under § 2255(a).

A petitioner is entitled to relief under § 2255(a) when his original conviction "was imposed in violation of the Constitution or laws of the

6

United States," or is in excess of the court's jurisdiction. As explained below, Mr. Webster's Count Six conviction, which depends on § 924(c)'s unconstitutionally vague residual clause, violates the Due Process Clause of the Fifth Amendment, violates federal law, and exceeds this Court's jurisdiction. Accordingly, this Court should grant him relief.

First, Mr. Webster's Count 6 conviction, which depended on § 924(c)'s unconstitutionally vague residual clause, violates due process. "Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *Davis*, 139 S. Ct. at 2325 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

Second, that Mr. Webster's § 924(c) conviction was imposed under a now unconstitutional statutory scheme constitutes a miscarriage of justice. *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law does not make criminal . . . such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255.").

Third, Mr. Webster's § 924(c) conviction for conduct that is now outside of the sweep of § 924(c) exceeds this Court's jurisdiction. *See United States v. Brown*, 752 F.3d 1344, 1352 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute.").

Moreover, if this Court finds, as it must, that either kidnapping resulting in death or conspiracy to commit kidnapping is not a crime of violence, Mr. Webster must be deemed actually innocent of the § 924(c) offense. *See Reece*, 938 F.3d at 634 n.3 ("As *Davis* reaffirmed, 'a vague law is no law at all.' If Reece's convictions were based on the definition of [COV] articulated in § 924(c)(3)(B), then he would be actually innocent of those charges under *Davis*.") (brackets in original) (quoting *Davis*, 139 S. Ct. at 2323); *see also United States v. Moore*, 802 F. App'x 338, 340 (10th Cir. 2020).

## B. Mr. Webster's claims are timely as required by § 2255(f).

Section 2255(f) imposes a one-year statute of limitations on § 2255 motions. This statute of limitations begins to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that

right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3). Here, the one-year statute of limitations began to run on June 24, 2019, the date on which the Supreme Court decided *Davis*. Mr. Webster has filed his request for relief before the expiration of this one-year period.

### C.    Mr. Webster's claims satisfy the provisions of § 2255(h)(2) because he has asserted a new rule of constitutional law made retroactive on collateral review by the Supreme Court.

The Fifth Circuit has recognized that *Davis* is retroactive to cases on collateral review. *See Reece*, 938 F.3d at 635 ("Having decided that *Davis* announced a new rule of constitutional law retroactively applicable on a first habeas petition, we consider the merits of Reece's petition.").

Even if the Fifth Circuit had not yet reached this conclusion, law and logic would dictate this result because *Davis* meets each of the prerequisites for retroactive application. *Davis* (1) announced a rule of constitutional law (2) that was previously unavailable and (3) that was made retroactive to cases on collateral review by the Supreme Court. *See* § 2255(h)(2).

9

### 1. *Davis* announced a rule of constitutional law.

*Davis'* rule was one of constitutional law. *Davis* held that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague under the due process clause of the Fifth Amendment. *Davis*, 139 S. Ct. at 2336.

### 2. *Davis* announced a new rule that was previously unavailable.

*Davis* announced a new rule. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). "*Davis* easily meets" the criteria for establishing a new rule, as "the result in *Davis* was not apparent to all reasonable jurists." *Reece*, 938 F.3d 630 at 634; *see also In re Hammoud*, 931 F.3d 1032, 1038 (11th Cir. 2019) (holding that *Davis* is a new rule because it was not dictated by precedent or apparent to all reasonable jurists); *In re Franklin*, 950 F.3d 909, 910-11 (6th Cir. 2020) (same); *United States v. Bowen*, 936 F.3d 1091, 1097-98 (10th Cir. 2019) (same); *In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (same).

Additionally, *Davis'* new rule was previously unavailable to Mr. Webster. The Supreme Court handed down its decision in *Davis* on June 24, 2019, well after Mr. Webster completed his direct appeal and initial § 2255 proceedings.

### 3. *Davis* is retroactive to cases on collateral review.

A new, previously unavailable rule of constitutional law must also have been made retroactive to cases on collateral review by the Supreme Court. In order for this to happen, such a rule must be substantive *and* the Supreme Court must have either expressly identified the rule as retroactive or multiple Supreme Court holdings must "necessarily dictate retroactivity of the new rule." *Tyler v. Cain*, 533 U.S. 656, 666 (2001). The rule in *Davis* meets both requirements: it is substantive and its retroactivity flows from Supreme Court holdings that so dictate.

First, *Davis* is retroactive on collateral review because it is substantive, not merely procedural. Although not all new rules of constitutional law provide a basis for post-conviction relief, new substantive rules are retroactive. *Welch*, 136 S. Ct. at 1264; *Teague*, 489 U.S. at 307, 311.

"A rule is substantive . . . if it alters the range of conduct or the class of persons that the law punishes." *Welch,* 136 S. Ct. at 1264-65 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). "This includes decisions that narrow the scope of a criminal statute by interpreting its

terms, as well as constitutional determinations that place particular conduct . . . beyond the State's power to punish." *Welch*, 136 S. Ct. at 1265 (quoting *Schriro*, 542 U.S. at 353).

In *Welch*, the Supreme Court found that *Johnson* was substantive and retroactive because it removed from the statute's reach people who had been subject to enhanced punishment under the ACCA solely because of that statute's now-defunct residual clause. *Id.*

This reasoning applies with even more force here. Beyond altering sentences, *Davis* invalidates convictions for people once subject to § 924(c) liability based on predicate offenses that fell solely within the now-defunct § 924(c) residual clause. As such, *Davis* "narrow[s] the scope of a criminal statute" and "place[s] particular conduct . . . beyond the State's power to punish." *Welch*, 136 S. Ct. at 1265 (quoting *Schriro*, 542 U.S. at 353).

The Fifth Circuit has recognized that "the rule announced in *Davis* meets the standard for a new substantive rule" because "the residual clause's invalidation narrows the scope of conduct for which punishment is now available." *Reece*, 938 F.3d at 635. Other appellate courts also have found that *Davis* is substantive, and, in turn,

12

retroactive. *See Franklin*, 950 F.3d at 911; *In re Mullins*, 942 F.3d 975, 978-79 (10th Cir. 2019); *Hammoud*, 931 F.3d at 1037-39.

Moreover, § 924(c)'s residual clause is virtually identical to, and was invalidated for precisely the same reason as, ACCA's residual clause, and the resulting effect has been the same—leaving for consideration whether a predicate crime is categorically a crime of violence under the remaining elements clause.

Second, § 2255(h)(2) imposes an additional requirement: the new rule must not only be retroactive, it must have been "made retroactive to cases on collateral review by the Supreme Court." *See* § 2255(h)(2). To satisfy § 2255(h)(2), the Supreme Court must have expressly held that the new rule is retroactive on collateral review, or the Supreme Court's holdings in multiple cases must "necessarily dictate retroactivity of the new rule." *Tyler*, 533 U.S. at 666. Here, *Davis* and *Welch* together dictate retroactivity.

Justice O'Connor explained in her concurrence in *Tyler* how the Supreme Court can have made a new rule retroactive through the holdings in multiple cases:

> [I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two

that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have 'made' the given rule retroactive to cases on collateral review.

533 U.S. at 668-69 (O'Connor, J., concurring).

In *Welch*, the Supreme Court held that *Johnson*, which invalidated the ACCA's residual clause, established a substantive rule with retroactive application. *Welch*, 136 S. Ct. at 1265. *Davis* invalidated a nearly identical residual clause, noting, "In recent years, this Court has applied these [constitutional] principles to two statutes that bear more than a passing resemblance to § 924(c)(3)(B)'s residual clause." *Davis*, 139 S. Ct. at 2325.

*Welch* and *Davis* are straightforward examples of the Case One/Case Two framework that Justice O'Connor discussed in *Tyler*. Case One—*Welch*—held that the invalidation of a statutory provision on constitutional grounds applies retroactively. Case Two—*Davis*—announced the invalidation of a statutory provision that is functionally identical to the one addressed in *Welch*. The holdings of these two cases "logically permit no other conclusion than that the rule" in *Davis* is retroactive. *Tyler*, 533 U.S. at 669 (O'Connor, J., concurring).

14

Following this logic, the Fifth Circuit "recently held that *Davis* announced a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *United States v. Dixon*, 799 F. App'x 308, 309 (5th Cir. 2020) (citing *Reece*, 938 F.3d at 635).

Other courts of appeals have also held that "[b]ecause *Davis* has the same limiting effect on the range of conduct or class of people punishable under § 924(c) that *Johnson* has with respect to the ACCA, *Welch* dictates that *Davis*—like *Johnson*—'announced a substantive rule that has retroactive effect in cases on collateral review.'" *Mullins*, 942 F.3d at 979 (quoting *Welch*, 136 S. Ct. at 1268); *see also Hammoud*, 931 F.3d at 1039 (quoting *Tyler*, 533 U.S. at 666) ("for purposes of § 2255(h)(2), . . . taken together, the Supreme Court's holdings in *Davis* and *Welch* 'necessarily dictate' that *Davis* has been 'made' retroactively applicable to criminal cases that became final before *Davis* was announced.")

Therefore, *Davis* announced a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.

### III. *Davis* invalidates Mr. Webster's § 924(c) conviction because neither kidnapping resulting in death nor conspiracy is a crime of violence under a categorical analysis.

Following *Davis*, a predicate for a § 924(c) count can be a crime of violence only under § 924(c)'s elements clause: a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). In determining whether an offense is a crime of violence, a court must "appl[y] a categorical approach, looking only to the statutory definitions—i.e., the elements—of a defendant's offense, and not to the particular facts underlying the convictions." *Buck*, 847 F.3d at 274; *accord Davis*, 139 S. Ct. at 2326-30; *Reece*, 938 F.3d at 635.

If it is not possible to tell on which of the predicate crimes the jury based its determination of guilt for the § 924(c) charge, the court may employ the modified categorical approach, and consult a select few documents to help "'determine what crime, with what elements,' formed the basis of a defendant's conviction." *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir. 2019) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). These documents, known as *Shepard* documents, are generally limited to the indictment, jury instructions, and verdict

form. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). In these cases, the modified categorical approach "acts not as an exception [to the categorical approach] but instead as a tool," and the inquiry is similarly confined to the elements of the crime and not the facts of the case. *Descamps v. United States*, 570 U.S. 254, 263 (2013).

Under the modified categorical approach, an offense cannot qualify as a § 924(c) predicate unless the *Shepard* documents establish with "certainty" that the defendant was "necessarily" convicted of an offense that meets the elements-based test for "crimes of violence." *Shepard*, 544 U.S. at 21-23. "[P]lausibility or even likelihood" that the defendant was convicted of § 924(c) based on a qualifying "crime of violence" is not enough. *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010); *see also United States v. Gonzalez-Chavez*, 432 F.3d 334, 338 (5th Cir. 2005) (discussing the demand for certainty when reviewing *Shepard* documents). This high bar protects against the kind of evidentiary inquiries into the factual basis for the conviction that the categorical approach was designed to avoid. *See Shepard*, 544 U.S. at 21.

When it cannot be conclusively determined that the defendant was convicted of an offense the elements of which categorically qualify as a crime of violence, the court should assume he was convicted of the least serious offense criminalized by the underlying statute. *See United States v. Amaya*, 576 F. App'x 416, 419 (5th Cir. 2014); *see also Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) ("[W]e must presume [Ortiz's] conviction rested upon [nothing] more than the least of th[e] acts criminalized." (alterations in original) (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013))); *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc) ("[I]n trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced . . . in the absence of a special verdict form identifying the factual bases for conviction.").

In the same vein, a § 924(c) conviction cannot be sustained if one of the possible predicates is not categorically a crime of violence. *See In re Gomez*, 830 F.3d 1225, 1227 (11th Cir. 2016) ("[B]ecause the jurors had multiple crimes to consider in a single count . . . they could have convicted Gomez of the § 924(c) offense without reaching unanimous

18

agreement on during which crime it was that Gomez possessed the firearm.").

Thus, a § 924(c) conviction based on multiple predicates cannot stand when one possible predicate offense does not categorically qualify as a crime of violence and the *Shepard* documents do not conclusively establish the basis of the § 924(c) conviction.

Here, neither kidnapping resulting in death (charged in Count One) nor conspiracy to commit kidnapping (charged in Count Two) is a categorical crime of violence under § 924(c)'s elements clause. And, because it is not clear which predicate offense jurors relied on, if either is not a crime of violence under § 924(c)'s elements clause, the § 924(c) conviction cannot stand.

## A. Conspiracy to commit kidnapping is not a crime of violence under the elements clause.

Section 1201(c) makes it a crime "[i]f two or more persons conspire to violate this section [kidnapping] and one or more of such persons do any overt act to effect the object of the conspiracy . . . " Conspiracy to commit kidnapping under § 1201(c) is analogous to conspiracy under 18 U.S.C. § 371, so the elements of conspiracy to commit kidnapping are

(1) an agreement to commit a kidnapping, (2) the defendant's knowledge, and (3) an overt act to effect the kidnapping. *See United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010) (discussing the elements of conspiracy under § 371).

Conspiracy to commit kidnapping is not a crime of violence under § 924(c)'s elements clause. *See United States v. Sanford*, 779 F. App'x 568, 570 (10th Cir. 2019) ("Both Sanford and the government agree that the predicate offenses for Sanford's § 924(c) conviction—kidnapping and conspiracy to kidnap—could only qualify as 'crimes of violence' under § 924(c)(3)(B)'s residual clause. Thus, as the parties also agree, it is clear that, in light of *Davis*, Sanford's § 924(c) conviction and sentence cannot stand.")

None of the elements of conspiracy to commit kidnapping require the use, attempted use, or threatened use of physical force against the person or property of another: an agreement does not require the attempted, threatened, or actual use of force; knowledge does not require the attempted, threatened, or actual use of force; and committing an overt act does not require the attempted, threatened, or actual use of force. *See Reece*, 938 F.3d at 635-36 (holding that

conspiracy under 18 U.S.C. § 371, which also requires an agreement, knowledge, and an overt act, is not a crime of violence under § 924(c)'s elements clause); *United States v. Robinson*, 783 F. App'x 401, 402-03 (5th Cir. 2019) (same).

Consequently, conspiracy to commit kidnapping is not a crime of violence under § 924(c)'s elements clause. On this basis alone, Mr. Webster's conviction on Count 6 is invalid.

### B. Kidnapping is not a crime of violence under the elements clause.

Kidnapping under 18 U.S.C. § 1201 requires the following elements: "(1) the transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom or reward or otherwise, (4) such acts being done knowingly and willfully." *United States v. Barton*, 257 F.3d 433, 439 (5th Cir. 2001). The statute states that the kidnapping can be accomplished not only by "seiz[ing]" or "abduct[ing]," but also by inveigl[ing]" (i.e. persuading by ingenuity) or "decoy[ing]" (i.e. luring). § 1201(a).

Kidnapping is not a crime of violence under § 924(c)'s elements clause. *See United States v. Carreon*, 803 F. App'x 790, 2020 WL 2201958, at *1 (5th Cir. 2020) (quoting *Reece*, 938 F.3d at 635)

("[F]ollowing *Davis*, Carreon's Section 924(c) conviction 'can be sustained only if [kidnapping] can be defined as a [crime of violence] under § 924(c)(3)'s element's clause.' The government concedes that it cannot. We therefore vacate Carreon's Section 924(c) conviction.") (alterations in original).

As *Carreon* recognizes, none of the elements of kidnapping categorically requires the use, attempted use, or threatened use of physical force against the person or property of another. Transportation in interstate commerce does not require the attempted, threatened, or actual use of force. Lack of consent does not require the attempted, threatened, or actual use of force, because kidnapping can be accomplished by inveigling or decoying. Holding the person does not require the attempted, threatened, or actual use of force, again because kidnapping can be accomplished by inveigling or decoying. And the defendant's knowledge or willfulness does not require the attempted, threatened, or actual use of force.

Consequently, kidnapping is not a crime of violence under § 924(c)'s elements clause.

## C. Kidnapping resulting in death is not a crime of violence under the elements clause.

Section 1201(a) provides that kidnapping "shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." The additional requirement that the death of a person results does not elevate this statute to a crime of violence. It requires neither an act of violence nor an intentional, or even reckless, mens rea.

### 1. Kidnapping resulting in death does not require the use, attempted use, or threatened use of physical force.

In general, "*[o]f course, a crime may result in death or serious injury without involving [the] use of physical force.*" *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) (second alteration in original) (quoting *United States v. Torres-Miguel*, 701 F.3d 165, 168 (4th Cir. 2012), *abrogated in part by United States v. Castleman*, 572 U.S. 157 (2014)).

Examples make clear how kidnapping "may result in death or serious injury without involving [the] use of physical force." *Middleton*, 883 F.3d at 491 (emphasis removed). One can easily imagine realistic scenarios in which a defendant commits a kidnapping resulting in death without any use, attempted use, or threatened use of force.

23

For example: A non-custodial parent could lure her child into a car, and then get into a car accident that results in the child's death. A kidnapper could lure someone away from home using deception; after several days, the victim could die because, unbeknownst to the kidnapper, she was unable to take a necessary medication (such as insulin, if she is diabetic). A kidnapper could lure someone into a remote area and leave him there, and he could die of hypothermia.

In each of these examples, the kidnapping would be a but-for cause of the victim's death. But none of these examples involves the use, attempted use, or threatened use of force.

### 2. Kidnapping resulting in death does not require an intentional, or even reckless, mens rea.

Moreover, beyond the general point that it is possible to commit kidnapping resulting it death without the use of force, it is also important that kidnapping resulting in death does not have the requisite mens rea to qualify as a crime of violence under § 924(c)'s residual clause.

To qualify as a crime of violence under § 924(c)'s elements clause, an offense must require the *intentional* use of force. "[T]he 'use . . . of physical force against the person or property of another'—most

naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (second alteration in original) (quoting 18 U.S.C. § 16(a)) (§ 16(a) is an elements clause that is virtually identical to § 924(c)'s elements clause).

Kidnapping resulting in death does not satisfy this standard—it does not require the intentional use of force. "No matter how you slice it, 'if death results' does not mean 'if death was intended.'" *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979). A conviction for kidnapping resulting in death "does not require that the deaths result from voluntary and intentional conduct"; the kidnapping statute requires "only that 'the death of any person results' in the course of the kidnapping." *United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) (quoting 18 U.S.C. § 1201(a)); *see also United States v. Mayhew*, 380 F. Supp. 2d 936, 960 (S.D. Ohio 2005) ("[T]he 'if the death of any person results' language of 18 U.S.C. § 1201 does not contain an intent requirement.").

Accordingly, kidnapping resulting in death does not categorically involve the use, threatened use, or attempted use of force—and especially does not categorically involve the intentional use, threatened

use, or attempted use of force. Consequently, kidnapping resulting in death is not a crime of violence under § 924(c)'s elements clause.

## PRAYER FOR RELIEF

Because the predicate underlying Mr. Webster's § 924(c) conviction as charged in Count Six is not a crime of violence, Mr. Webster is entitled to relief from his unconstitutional conviction, and the sentence resulting therefrom. Therefore, he respectfully asks this Court:

1.   To vacate his conviction for Count Six of the Superseding Indictment, and the resulting sentence;

2.   To permit him to file a memorandum of law in support of this Motion;

3.   To grant argument on this Motion;

4.   To order a resentencing hearing;

5.   For any and all such further relief as is necessary to effectuate this judgment.