# 20-10530

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**IN RE BRUCE CARNEIL WEBSTER,**
Movant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:94-CR-121-Y-1

**RESPONSE OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE APPLICATION FOR LEAVE TO FILE A
SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255**

Erin Nealy Cox
United States Attorney

Leigha Simonton
Chief, Appellate Division
Texas Bar No. 24033193

Brian McKay
Deputy Chief, Appellate Division
Texas Bar No. 24046395

Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838

U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8660

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

In light of the government's acknowledgments that (1) the rule of *Davis* satisfies AEDPA's gatekeeping standards for successive authorization, and (2) Webster may have made a minimal showing that his proposed claim relies on the rule of *Davis*, oral argument will not benefit this Court as it decides whether to authorize his successive collateral attack.

i

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT........................................i

TABLE OF AUTHORITIES ..............................................................iv

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUES ..........................................................1

STATEMENT OF THE CASE..............................................................1

    1.    Webster kidnaps, gang-rapes, tortures, and murders 16-year-old Lisa Rene in retaliation for a drug debt her brother owed..............1

    2.    This Court affirms Webster's criminal judgment and later denies him authorization to file a successive motion under 28 U.S.C. § 2255..................................................................4

    3.    Webster now seeks authorization to file a successive Section 2255 motion attacking his conviction and 60-month sentence on the Section 924(c) count...................................................5

SUMMARY OF THE ARGUMENT........................................................5

ARGUMENT AND AUTHORITIES.........................................................6

    1.    The rule of *Davis* satisfies 28 U.S.C. § 2255(h)(2).........................6

    2.    The rule of *Davis* has no impact on Webster's Section 924(c) conviction. ..............................................................8

        i.    Webster's Section 924(c) conviction was predicated on capital kidnapping resulting in death...................................9

        ii.    Capital kidnapping resulting in death is a crime of violence under Section 924(c)'s elements clause...............................9

    3.    Although Webster's position is unmeritorious, this Court has held that a *Davis* challenge to a Section 924(c) conviction moored to kidnapping satisfied the prima facie showing.........................15

CONCLUSION.................................................................................... 17

CERTIFICATE OF SERVICE ............................................................ 18

CERTIFICATE OF COMPLIANCE ...................................................... 18

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                **Page(s)**

*Burrage v. United States*, 571 U.S. 204 (2014)................................................10, 12

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ............................................. 14

*In re Dixon*, 799 F. App'x 308 (5th Cir. 2020) .................................................. 16

*In re Franklin*, 950 F.3d 909 (6th Cir. 2020)..……………………………….8

*In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019)..................................... 7

*In re Matthews*, 934 F.3d 296 (3d Cir. 2019)...................................................... 8

*In re Mullins*, 942 F.3d 975 (10th Cir. 2019)...................................................... 7

*In re Robinson*, 917 F.3d 856 (5th Cir. 2019),
  *cert denied*, 140 S. Ct. 1128 (2020) ............................................................. 16

*In re Salazar*, 443 F.3d 430 (5th Cir. 2006)...................................................... 16

*In re Sparks*, 657 F.3d 258 (5th Cir. 2011)......................................................... 6

*In re Webster*, 605 F.3d 256 (5th Cir. 2010),
  *cert. denied* 562 U.S. 1091 (2010), .............................................................5

*Johnson v. United States*, 559 U.S. 133 (2010) ................................................ 11

*Mathis v. United States*, 136 S. Ct. 2243 (2016) ............................................ 9, 10

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) ....................................................... 14

*Stokeling v. United States*, 139 S. Ct. 544 (2019) ............................................ 11

*Tyler v. Cain*, 533 U.S. 656 (2001)..................................................................... 7

*United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017).......................... 14

*United States v. Ceron*, 775 F.3d 222 (5th Cir. 2014) ....................................... 14

**Federal Cases, continued** ...............................................................Page(s)

*United States v. Davis*, 139 S. Ct. 2319 (2019) ..............................................1, 5, 8

*United States v. Hayes*, 589 F.2d 811 (5th Cir. 1979)....................................... 12

*United States v. Hill*, 890 F.3d 51 (2d Cir. 2018),
  *cert. denied* 139 S. Ct. 844 (2019).  ............................................................. 14

*United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008) ........................................ 11

*United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) ......................................... 7

*United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) .........10, 11, 12, 14

*United States v. Ruiz-Hernandez*, 890 F.3d 202 (5th Cir. 2018),
  *cert. denied* 139 S. Ct. 278 (2018); ............................................................. 10

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998),
  *cert. denied* 528 U.S. 829 (1999) ..............................................................*passim*

*United States v. Webster*, 392 F.3d 787 (5th Cir. 2004) ...................................... 4

*United States v. Wiese*, 896 F.3d 720 (5th Cir. 2018)....................................... 16

*Webster v. Lockett*, 2019 WL 2514833 (S.D. Ind. June 18, 2019) ......................5

*Welch v. United States*, 136 S. Ct. 1257  (2011) ............................................... 7

**Federal Statutes**

18 U.S.C. § 924(c)(1)(A)...................................................................................... 8

18 U.S.C. § 3591(a)(2)........................................................................................ 13

28 U.S.C. § 2244(b)(3)(C) .................................................................................. 15

28 U.S.C. § 2255(h)(2)..................................................................................... 6, 15

## STATEMENT OF JURISDICTION

Webster seeks leave to file a successive motion under 28 U.S.C. § 2255.

This Court has jurisdiction to rule on his request under 28 U.S.C.

§ 2244(b)(3)(A).

## STATEMENT OF THE ISSUES

1.  Does the rule of *Davis* satisfy the stringent requirements of 28 U.S.C. 2255(h)(2)?

2.  Does *Davis* cast doubt on Webster's firearm conviction, which was predicated on capital kidnapping resulting in death?

3.  Has Webster made at least a prima facie showing that he is entitled to relief under *Davis*?

## STATEMENT OF THE CASE

**1.  Webster kidnaps, gang-rapes, tortures, and murders 16-year-old Lisa Rene in retaliation for a drug debt her brother owed.**

Webster and his coconspirators[1] went to the Polo Run Apartments, looking to settle a drug debt. *United States v. Webster*, 162 F.3d 308, 318 (5th Cir. 1998), *cert. denied* 528 U.S. 829 (1999). Webster and another coconspirator had handguns. *Id.* A third conspirator carried a souvenir bat, and a fourth had duct tape and a jug of gasoline. *Id.*

---

[1] One of those coconspirators was Orlando Cordia Hall. Like Webster, Hall has also filed an application for successive authorization, relying on the rule of *United States v. Davis*, 139 S. Ct. 2319 (2019), to launch another collateral attack. *See In re Hall*, 19-10345 (5th Cir.). Hall's application is currently pending before this Court.

1

Inside the apartment was Lisa Rene, a 16-year-old high-school student. *Id.* Webster knocked at the front door and demanded entry. *Id.* Rene refused to let him, and she called 9-1-1. *Id.* Webster's coconspirator smashed a sliding-glass door with the bat, and Webster went inside the apartment. *Id.* He tackled Rene and dragged her to a waiting car, where she was raped. *Id.*

Webster and his coconspirators drove Rene from Dallas to Arkansas. *Id.* Along the way, Webster and another man took turns raping her. *Id.* The men rented a hotel room, where they tied Rene to a chair and raped her repeatedly. *Id.*

Webster and another coconspirator went to Byrd Lake Park, where they dug Rene's grave. *Id.* Webster and his coconspirators drove her to the park, but they left when they could not find her grave in the dark. *Id.*

The next morning, they brought Rene back to the park. *Id.* They covered her eyes. *Id.* Webster led the way to the grave, while another man guided her by her shoulders. *Id.* Webster's coconspirator covered her head with a sheet and then hit her in the head with a shovel. *Id.* at 319. She ran, but she was tackled. *Id.* Webster took turns hitting her with the shovel. *Id.* He then gagged her and dragged her into her grave. *Id.* After Webster stripped her, he poured gasoline over her, and buried her, still breathing, to die. *Id.*

The United States charged Webster with interstate kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count One), conspiracy to commit kidnapping (Count Two), traveling in interstate commerce with the intent to promote extortion (Count Five), and using or carrying a firearm during and in relation to a crime of violence (Count Six). *See United States v. Webster*, 4:94-CR-121-Y-1, Dkt. No. 15 (N.D. Tex. Nov. 22, 1994) (Superseding Indictment); *see also Webster*, 162 F.3d at 319. Count Six—the firearm count relevant to Webster's instant collateral attack—alleged that the four named defendants "aided and abetted by each other, did knowingly use and carry, firearms, during and in relation to a crime of violence, namely, kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) and conspiracy to commit kidnapping, in violation Title 18, United States Code, Section 1201(c)." *Webster*, 4:94-CR-121-Y-1, Dkt. No. 15 at 8.

Webster was tried separately from his codefendants. *Webster*, 162 F.3d at 319. At the guilt phase, the district court instructed the jury as to the elements of Count One:

First:    That the defendant, knowingly acting contrary to the law, kidnapped, seized, confined, or inveigled the person described in the indictment, Lisa Rene, as charged;

Second:    That the defendant held such person for ransom, reward, or some other benefit that the defendant intended to derive from the kidnapping;

3

Third:       That the defendant intentionally transported such person in interstate commerce while so kidnapped, confided, or inveigled; and

Fourth:      That the death of Lisa Rene resulted.

*United States v. Webster*, 4:94-CR-121-Y-1, Dkt. No. 862 at 110-11 (N.D. Tex. June 7, 1996). The court instructed on Count Six:

First:       That the defendant committed the crime of interstate kidnapping as alleged in Count One of the Indictment; and

Second:      That the defendant knowingly used or carried a firearm during and in relation to the defendant's commission of the crime of interstate kidnapping.

*Id.* at 114-15.

The government dismissed Count Five, and the jury found Webster guilty on Counts One, Two, and Six. *Webster*, 162 F.3d at 319. Following a separate sentencing proceeding in front of the same jury, the district court sentenced Webster to death on Count One, life imprisonment on Count Two, and a consecutive 60-month prison term on Count Six. *Id.*

**2.     This Court affirms Webster's criminal judgment and later denies him authorization to file a successive motion under 28 U.S.C. § 2255.**

This Court affirmed Webster's convictions and sentences on direct appeal. *See Webster*, 162 F.3d at 317-58. Webster's first Section 2255 motion was denied, and this Court declined to grant him a certificate of appealability. *United States v. Webster*, 392 F.3d 787, 790 (5th Cir. 2004). After this Court

4

denied an earlier request for successive authorization, *see In re Webster*, 605 F.3d 256 (5th Cir. 2010), *cert. denied* 562 U.S. 1091 (2010), Webster successfully petitioned for relief under 28 U.S.C. § 2241 in the Southern District of Indiana, *see Webster v. Lockett*, No. 2:12-CV-86-WTL-MJD, 2019 WL 2514833 (S.D. Ind. June 18, 2019). A district judge there set aside Webster's death sentence and ordered the district court in the Northern District of Texas to resentence him. *See id.* at *11. The United States is now appealing that ruling to the Seventh Circuit. *See Webster v. Watson*, No. 19-2683 (7th Cir.).

**3.    Webster now seeks authorization to file a successive Section 2255 motion attacking his conviction and 60-month sentence on the Section 924(c) count.**

Webster now seeks authorization to file a successive Section 2255 motion. (Motion at 16.) He relies on *United States v. Davis*, 139 S. Ct. 2319 (2019), to trigger 28 U.S.C. §2255(h)(2). (Motion at 1.) His theory is that his Section 924(c) conviction was predicated on the now invalid residual clause, so that conviction and his 60-month sentence must be set aside. (Motion at 9.)

**SUMMARY OF THE ARGUMENT**

Webster is correct that the rule of *Davis* satisfies the stringent requirements of Section 2255(h)(2). But Webster in no way benefits from the rule of *Davis*. Webster's Section 924(c) conviction was predicated on capital

5

death-results kidnapping. Because that crime satisfies Section 924(c)'s elements clause, *Davis*—which invalidated the residual clause—had no impact on Webster's conviction. He cannot rely on the rule of *Davis* to set aside his Section 924(c) conviction, so this Court should deny his application for successive authorization.

Nevertheless, the government recognizes that Webster might have made a minimal, prima facie showing that his proposed claim relies on the rule of *Davis*. If so, this Court should authorize Webster to return to the district court to press his *Davis* claim.

## ARGUMENT AND AUTHORITIES

Before Webster can file a successive collateral attack under Section 2255, this Court must certify that his proposed claim for relief is "premised" on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011); *accord* 28 U.S.C. § 2255(h)(2).

**1.    The rule of *Davis* satisfies 28 U.S.C. § 2255(h)(2).**

The rule of *Davis* is one of the rare rules that satisfies the stringent requirements of Section 2255(h)(2).[2] Although in *Davis* itself "[t]he Court did

---

[2] In *In re Hall*, No. 19-10345 (5th Cir.), this Court invited amicus to argue "in support of the view that we should deny the petition [for successive authorization] because the Supreme Court has not yet held that *Davis* applies retroactively, as AEDPA requires under 28 U.S.C.

not state whether *Davis* would apply retroactively," *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019), the Supreme Court has necessarily dictated that *Davis* is retroactive under the Court's rubric set out in *Tyler v. Cain*, 533 U.S. 656 (2001). There, the Supreme Court recognized that it could make a rule retroactive within the meaning of 28 U.S.C. § 2244 "with the right combination of holdings." *Id.* at 666. "Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule." *Id.*

Applying the principles from *Tyler*, the Supreme Court has necessarily made the rule of *Davis* retroactive. "The rule announced in *Davis* meets the standard for a new substantive rule." *Reece*, 938 F.3d at 635. "That conclusion is reinforced by *Welch* [*v. United States*, 136 S. Ct. 1257 1257 (2011)]." *Id.* The rule of *Davis* "narrows the scope of conduct for which punishment is now available," *Reece*, 938 F.3d at 635, and such "substantive" rules "have retroactive effect in cases on collateral review," *Welch*, 136 S. Ct. at 1268. *In re Mullins*, 942 F.3d 975, 979 (10th Cir. 2019) (concluding that "the Supreme Court has made *Davis* retroactively applicable to cases on collateral review"); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019) ("[F]or purposes of

---

§ 2255(h)(2)." Amicus filed a brief in support of that view, and Hall and the United States have filed briefs in response.

7

§ 2255(h)(2), we conclude that, taken together, the Supreme Court's holdings in *Davis* and *Welch* 'necessarily dictate' that *Davis* has been 'made' retroactively applicable to criminal cases that became final before *Davis* was announced.").[3]

**2.    The rule of *Davis* has no impact on Webster's Section 924(c) conviction.**

Section 924(c) criminalizes using or carrying a firearm during and in relation to "any crime of violence."  18 U.S.C. § 924(c)(1)(A).  Section 924(c) defines the phrase "crime of violence" in two, alternative provisions.  Section 924(c)(3)(A) defines it as a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another."  This subsection is known as the "elements clause."  Section 924(c)(3)(B) defines "crime of violence" as a felony "that[,] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  This subsection is known as the "residual clause."  *Davis*, 139 S. Ct. 2323-24.  In *Davis*, the Supreme Court struck down as unconstitutionally vague the residual clause.  Id. at 2336.  But *Davis* has no impact on Section 924(c)(3)(A)'s definition of "crime of violence" under the elements clause.

---

[3] *See also In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020) (same); *In re Matthews*, 934 F.3d 296, 298 (3d Cir. 2019) (holding that it is "undisputed" that *Davis* satisfies Section 2255(h)(2) under the Third Circuit's gatekeeping standards).

> ### i. Webster's Section 924(c) conviction was predicated on capital kidnapping resulting in death.

*Davis* had no impact on Webster's conviction on Count Six because his predicate crime of violence—capital kidnapping resulting in death under 18 U.S.C. § 1201(a)—qualifies as a "crime of violence" under Section 924(c)(3)(A)'s elements clause: it has as an element the use, attempted use, or threatened use of physical force against the person or property of another.  To argue otherwise, Webster's application for successive authorization claims that his Section 924(c) conviction was predicated on either death-results kidnapping or conspiracy to commit kidnapping and that neither of those offenses satisfies the elements clause.  (Motion at 8-9.)  Although the superseding indictment mated Webster's firearm offense to death-results kidnapping or conspiracy to commit kidnapping, *Webster*, 4:94-CR-121-Y-1, Dkt. No. 15 at 8, the district court's instructions directed the jury to consider only the substantive kidnapping charge, *Webster*, 4:94-CR-121-Y-1, Dkt. 862 at 114-15.  There is no doubt in this record, then, that Webster's firearm offense was predicated on capital kidnapping resulting in death.

> ### ii. Capital kidnapping resulting in death is a crime of violence under Section 924(c)'s elements clause.

To determine whether an offense falls within the elements clause, courts generally apply a "categorical approach."  *See, e.g.*, *Mathis v. United States*, 136

S. Ct. 2243, 2248 (2016) (describing categorical approach in context of Armed Career Criminal Act).  Where, as here, the statute of conviction lists multiple alternative elements, as opposed to alternative means of committing a single element, it is "divisible" into different offenses.  *Id.* at 2249.  To classify a conviction under a divisible statute, a court may "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of."  *Id.*; *see United States v. Reyes-Contreras*, 910 F.3d 169, 174 (5th Cir. 2018) (en banc).

Webster implicitly acknowledges that the kidnapping statute is divisible. (*See* Motion at 8-9 (acknowledging that the jury must find that a death resulted).)  Because the death-results provision of the kidnapping statute triggers an enhanced penalty, 18 U.S.C. § 1201(a) (increasing the sentencing range if "the death of any person results"), that provision is an element of the aggravated offense of kidnapping resulting in death.  *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir. 2018) ("resulting-in-death element"

10

in 8 U.S.C. § 1324(a)(1)(B)(iv) "increases the applicable statutory maximum sentence and thus must be submitted to the jury and found beyond a reasonable doubt"), *cert. denied* 139 S. Ct. 278 (2018); *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008) ("death resulted" is an essential element of the offense of kidnaping resulting in death).  The kidnapping statute is therefore divisible into different offenses—kidnapping that does not result in death and kidnapping that does result in death.  And the jury found Webster guilty of kidnapping that resulted in the death of Lisa Rene and of carrying a firearm during that crime of violence.  *Webster*, 4:94-CR-121-Y-1, Dkt. No. 862 at 110-11, 114-15.

Moreover, kidnapping resulting in death has as an element the use, attempted use, or threatened use of physical force against the person or property of another.  "Physical force" in this context means "force capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting analogous provision of the Armed Career Criminal Act), including any "amount of force necessary to overcome a victim's resistance[.]"  *See also Stokeling v. United States*, 139 S. Ct. 544, 555 (2019).  The force may be applied by someone other than the defendant, *see Reyes-Contreras*, 910 F.3d at 182; it may be indirect and involve no actual bodily contact, *see id.* at 180-82, 184; and it need not be intentional, *see id.* at 183 ("the

11

'use of force' does not require intent because it can include knowing or reckless conduct").

Under *Reyes-Contreras*, to prove the offense of kidnapping resulting in death, the government will virtually always have to prove that the victim was subjected to "physical force" within the meaning of Section 924(c)(3)(A). *See* 910 F.3d at 187 n.38. The requirement that "death results" from the kidnapping requires a causal connection between the kidnapping and the death; it would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnapping. *See id.*; *see also Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a Section 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest). And establishing that connection will virtually always require proof that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the course of the commission of the offense—whether or not the force was direct or intentional. *See Reyes-Contreras*, 910 F.3d at 180-84.

12

Indeed, where, as here, kidnapping resulting in death is charged as a capital offense, to return a recommendation of death the jury necessarily must find that the defendant intentionally killed his victim; intentionally inflicted serious bodily injury that resulted in his victim's death; intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person and the victim died as a result of the act; or intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. *See* 18 U.S.C. § 3591(a)(2); *see also Webster*, 162 F.3d at 319 (" After the penalty phase, the jury returned special findings that Webster satisfied the requisite elements of intent" under Section 3591(a).)

All of those statutory aggravating factors entail intentional conduct that caused a victim's death. Capital kidnaping resulting in death, therefore, categorically has as an element—imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another because no defendant can be found guilty of that offense without a finding that he used force capable of causing physical pain or injury against another person.

13

The existence of possible hypothetical scenarios in which death might result from a kidnapping without the use of "physical force" does not change the categorical analysis under Section 924(c)(3)(A). The Supreme Court and this Court have cautioned against using "legal imagination" to treat an offense as categorically overbroad. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks omitted); *id.* ("there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime'") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *Reyes-Contreras*, 910 F.3d at 187 ("A more realistic approach comports with reason and common sense."); *United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) (per curiam) (reliance on a "clever hypothetical" to show that an offense can be committed without the use of force "is the type of argument the Supreme Court has instructed [courts] to avoid crediting"). Webster would need to point this Court to at least one case in which a court found the death-results element of kidnapping resulting in death where there was no application of "physical force." *See United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (en banc) (construing *Duenas-Alvarez*, 549 U.S. at 193); *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) ("[T]here must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of

14

violence.  To show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues.  To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy.") (cleaned up), *cert. denied* 139 S. Ct. 844 (2019).  Webster's case is no example, and he has not offered another example here.[4]  And as explained above, no such case could exist in the capital context, where kidnaping resulting in death must always include the additional element of intentional violence.

Because Webster's Section 924(c) conviction is predicated on a crime of violence under the elements clause, *Davis* cannot pave the way to the relief that Webster seeks.  His request for authorization should be denied.

3.    **Although Webster's position is unmeritorious, this Court has held that a *Davis* challenge to a Section 924(c) conviction moored to kidnapping satisfied the prima facie showing.**

At this stage, the Court may authorize Webster's successive Section 2255 motion only if his application makes a prima facie showing that his claim relies on the new rule of constitutional law that has been made retroactive by the Supreme Court.  28 U.S.C. §§ 2244(b)(3)(C), 2255(h)(2).  This showing does not require the Court to fully resolve the claim's merits: "A 'prima facie

---

[4] In his proposed Section 2255 motion, Webster offers up only hypotheticals.  (Proposed Successive Motion at 23 (arguing that "one can easily *imagine* realistic scenarios").)

15

showing' is simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Robinson*, 917 F.3d 856, 868 (5th Cir. 2019) (quotation marks omitted), *cert denied*, 140 S. Ct. 1128 (2020). "That standard is satisfied where the movant puts forth minimally sufficient evidence to make a prima facie case such that there is sufficient, albeit slight, merit in the petitioner's motion to warrant further exploration by the district court." *Id.* (quotation marks and alterations omitted). That is not to say that a prima facie showing precludes all consideration of the merits. *See In re Salazar*, 443 F.3d 430, 431-34 (5th Cir. 2006) (considering whether defendant made a prima facie showing of mental retardation). Simply alleging that the claim is based on the new Supreme Court decision is not enough. *See id.* (scrutinizing claim of mental retardation). And a defendant has to make a sufficient showing that the new decision actually comes into play in their case—more than just that it possibly did. *See, e.g.*, *United States v. Wiese*, 896 F.3d 720, 724 (5th Cir. 2018).

Webster has failed to make that showing. Although the rule of *Davis* satisfies Section 2255(h)(2), *Davis* does not benefit Webster for the reasons set out above.

The government recognizes, however, that this Court recently authorized the successive motion of an applicant seeking to challenge his Section 924(c) conviction attached to a generic kidnapping count. *See In re*

*Dixon*, 799 F. App'x 308, 309 (5th Cir. 2020). The aggravated offense of capital kidnapping causing death is meaningfully different; however, neither this Circuit nor any of its sister circuits has yet addressed whether that offense is a crime of violence under 18 U.S.C. § 924(c)(3)(A). In light of this, the government recognizes that the Court might find that Webster has satisfied the minimal prima facie showing required to satisfy Section 2255(h).

## CONCLUSION

If this Court finds that Webster has made a prima facie showing of relief under *Davis*, the Court should authorize his successive Section 2255 motion.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

Attorneys for Appellee

17

## CERTIFICATE OF SERVICE

I certify that this document was served on counsel for Webster, Florence Italia Patti, through the Court's ECF system on June 23, 2020, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,824 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Date: June 23, 2020

18